UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DUANE JENKINS**, *Plaintiff,* v. **MASON HARRIMAN GROUP, INC**, *Defendant.* | Case No. 1:23-cv-629-RCL |

**MEMORANDUM OPINION**

Plaintiff Duane Jenkins, a Virginia resident, brought this diversity action against Defendant Mason Harriman Group, Inc. (MHG), a New Jersey corporation headquartered in Washington, D.C. Jenkins alleges breach of contract and unjust enrichment, and he seeks $400,000 in damages. Complaint at 5–6, ECF No. 2. Pending before the Court is MHG's motion for summary judgment. ECF No. 48. For the reasons given below, the Court will **GRANT** summary judgment.

**I.   BACKGROUND**

**A. Factual History**

MHG is a consulting firm that provides a variety of services to both private and public sector clients. Vagias Depo. at 45:06–13, ECF No. 49-2. As relevant here, MHG provides cost modeling services to federal agencies by leveraging third-party software products. *Id.* at 61:17–65:22. In 2021, MHG hired Jenkins as an independent contractor. *Id.* at 140:13–15. Before entering the private sector, Jenkins worked at various federal agencies, including the Small Business Administration (SBA). Jenkins Depo. at 9:17–11:04, ECF No. 52-2.

The parties entered into an agreement (the "Subcontractor Agreement" or "Agreement") outlining the details of the consulting services Jenkins would provide to MHG. Subcontractor Agreement, Complaint at 10–30, ECF No. 2. In particular, the Agreement stated that Jenkins

1

would provide MHG with consulting services for specific MHG clients as outlined in advance within separate task orders. *Id.* at 10. The parties entered into two task orders for projects relating to the Department of Homeland Security (DHS) and the Department of Health and Human Services (HHS). Task Orders, Complaint at 75–80.

Under the contract, any work product developed by Jenkins during the term set for the completion of the task orders constituted "'work for hire' for the sole benefit of copyright ownership belonging exclusively to MHG." Subcontract Agreement, Complaint at 15, ECF No. 2. But the Agreement further provided that Jenkins retained "all intellectual property rights to any and all pre-existing" works. *Id.* To the extent any deliverable for DHS or HHS "contain[ed] any pre-existing proprietary materials," Jenkins "granted to MHG" a "license," which was transferable to the client, "to use, modify, and reproduce for use with a [d]eliverable only." *Id.* at 15–16.

Separately, Jenkins signed MHG's Handbook, which requires employees to "sign an intellectual property disclosure form that lists any prior inventions . . . developed" before employment begins. Handbook, Complaint at 44–45, ECF No. 2. Jenkins has given inconsistent accounts of whether he ever identified in writing the BCPi and TBMx methods as his intellectual property to MHG.[1] For its part, MHG insists that it repeatedly requested that Jenkins do so to no avail. *E.g.,* Vagias Depo. at 134:20–135:10, ECF No. 49-2. The Subcontract Agreement does not reference the Handbook.

Before entering the Agreement with MHG, Jenkins developed a cost-management method he calls "Budget, Cost, Performance Integration" (BCPi) and a derivative method called

---

[1] *Compare* Jenkins' Decl. ¶¶ 15-16, ECF No. 52-1 ("At that time, I provided Mr. Washington a written description of my IP" and "[n]either the late Mr. Washington, nor anyone else at MHG, ever requested that I provide any further documentation of my IP beyond what had already been provided . . . ."), *with* Jenkins Depo. at 53:20-54:10, ECF No. 52-2 ("**Q.** I'm interested in understanding your efforts to specifically identify your proprietary information in writing to MHG. **A.** I didn't put it in writing.").

"Technology Business Management extended" (TBMx).  Complaint at 2–3; Jenkins Opp. to SJM at 3, ECF No. 52.  Jenkins describes these inventions as "budgeting and finance software functionality and requirement specifications, methodologies, and formulas."  Complaint at 3, ECF No. 2.  In his words, they are a "configuration" of a third-party cost-budget modeling software called CostPerform.  Jenkins Depo. at 64:18–65:10, ECF No. 52–2 ("My proprietary information was . . . . [t]he configuration of Costperform to do BCPi or TBM[x].").  Jenkins further explains that he developed BCPi and TBMx "in collaboration with" CostPerform's software development team, who "jointly designed and built" the product with him.  Jenkins' First Declaration ¶ 10, ECF No. 52-1.  The former President of CostPerform, Lim Vermeer, with whom Jenkins claims to have worked, denies this involvement.  Vermeer's Declaration ¶ 9, ECF No. 58-2.

CostPerform is owned and developed by a Dutch company.  COMPANY INFORMATION, COSTPERFORM, https://www.costperform.com/about-us/ [https://perma.cc/J92F-JAXB].  It describes itself as a software platform that "offers multiple cost accounting and allocation methods, smart calculation functions, analysis and simulation tools, and much more."  *Id.*  Jenkins does not own any rights in CostPerform itself.  Jenkins Depo. at 22:15–17, 37:15–18, ECF No. 52-2.  Nor does he suggest that there exists any restriction on someone other than MHG using CostPerform in the same manner he used it—or in other words, he does not claim an ability to restrict any and all end users of CostPerform based on his intellectual property rights in the BCPi and TBMx methods.  Jenkins Depo. at 27:16–19; 71:13–72:20.

While Jenkins at one point had a copyright application pending, the U.S. Copyright Office closed Jenkin's application as abandoned in 2023 after Jenkins failed to send the agency the materials he intended to copyright.  Copyright Office Email 1, ECF No. 48–3; Copyright Office Email 2, ECF No. 48–4; Jenkins Depo. at 33:22–34:07, ECF No. 52–2.  To support his claim that

3

these methods are his intellectual property, Jenkins asserts that Vermeer has personally recognized that BCPi and TBMx are unique solutions to cost-budget and management analysis. Jenkins' First Declaration ¶¶ 7, 9–10, 26, ECF No. 52-1; Jenkins Depo. 27:01–28:01, ECF No. 52–2. Vermeer has declared that this "is not true," he "ha[s] not said or recognized this," and he previously declined Jenkins' request to submit a declaration in this case because Jenkins asked him to make statements that "are not true." Vermeer Declaration ¶ 7–12, ECF No. 58-2.

After the Subcontractor Agreement between MHG and Jenkins terminated, Jenkins continued to have weekly video calls with the CEO of MHG, Theodore Vargas, regarding possible business opportunities. Jenkins' First Declaration ¶ 18, ECF No. 52-1. On one of these calls, Vagias presented a slideshow and sales pitch that MHG planned to use to acquire the SBA as a client. *Id.* ¶ 19. Jenkins later testified that the slideshow used his BCPi method without his knowledge or approval. *Id*. MHG ended up securing a subcontract with a third-party contractor, Sara Software Systems, LLC, to provide services to the SBA—and received $725,337.58 in profits. Interrogatory Response # 22, ECF No. 52-3.

### B. Procedural History

On March 9, 2023, Jenkins filed suit, alleging that MHG had wrongfully used his "pre-existing proprietary materials," in violation of the Subcontractor Agreement. Complaint at 6, ECF No. 2. In his Complaint, he asserted breach-of-contract and unjust-enrichment claims. *Id*. at 7–8. The Complaint alleged damages stemming from "substantial harm" to Jenkins' "brand" and the deprivation of "payment for his services." *Id*.

The discovery proceedings in this case proved to be protracted and fraught. *See generally*, Memorandum Opinion, ECF No. 60. In July 2025, the Court granted Jenkins' unopposed motion to compel outstanding discovery. ECF No. 36. On October 3, 2025, the day discovery closed,

Jenkins filed another motion to compel, and MHG filed a motion for summary judgment. Jenkins Motion to Compel, ECF No. 49; MHG MSJ, ECF No. 48. Six days later, Jenkins moved to extend discovery to retake a third-party deposition. Jenkins Motion to Extend Discovery, ECF No. 51. The Court ultimately denied Jenkins' latter motion but partially granted the motion to compel, giving Jenkins until November 5 to retake MHG's deposition or conduct the outstanding discovery in some other agreed-upon manner. Memorandum Opinion, ECF No. 60 at 14. In lieu of retaking the deposition, MHG provided written responses and an electronic file representing the cost models associated with the SBA project. Stipulations, ECF No. 62.

The Court also granted the parties the opportunity to submit supplemental briefs regarding summary judgment to address whatever new discovery came to light. *Id.* Along with his supplemental brief, Jenkins submitted a declaration stating that he compared the SBA cost model to the work he did under the Subcontractor Agreement and concluded that "MHG's cost model for the SBA was directly built from, and based upon, [his] work product performed under the DHS subcontract task order." Jenkins' Second Declaration ¶¶ 5–6, ECF No. 63-1.

The summary judgment briefing is now ripe. MHG SJM, ECF No. 48; Jenkins Opp. re SJM, ECF No. 52; MHG Reply re SJM, ECF No. 58; Jenkins Supp. Brief, ECF No. 63; MHG Supp. Brief, ECF No. 65.

## II.    LEGAL STANDARDS

Summary judgment is appropriate when the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court will view

the above facts in the light most favorable to the party opposing summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970).

### III.   DISCUSSION

MHG argues that Jenkins cannot carry his burden as to the contract claim because he cannot prove a breach of the Subcontractor Agreement or resulting damages. Since the Court agrees that Jenkins has failed to prove a breach, the Court will grant summary judgment on this claim without reaching the issue of damages. As for Jenkins' unjust-enrichment claim, MHG argues that Jenkins' allegations are governed by the terms of the Subcontractor Agreement—meaning the parties' valid contact precludes equity's "implied" contract as a matter of law. For the reasons given below, the Court will grant summary judgment as to the unjust-enrichment claim as well.

### A.   Contract Claim

"To prevail on a claim of breach of contract," a plaintiff must "establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)).[2]

In contending that Jenkins has failed to prove a breach of the Agreement, MHG begins by asserting that summary judgment is proper because Jenkins has not cogently described what BCPi and TBMx methods are, nor has he provided any non-testamentary evidence of them. It is true that Jenkins has done little to describe how his methods are distinct from ordinary uses of

---

[2] "A federal court sitting in diversity must apply the choice-of-law rules of the forum state—here, the District of Columbia." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). "D.C. law employs 'a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute.'" *Id.* (quoting *Washkoviak v. Student Loan Mktg. Ass'n,* 900 A.2d 168, 180 (D.C.2006)). Both parties have relied on D.C. law without acknowledging the choice-of-law question but, in any event, D.C. law appears to be the right pick. MHG is headquartered and conducts business in the District of Columbia, and the facts of this case revolve around Jenkins' and MHG's contract work with federal agencies in the District. Vagias Depo. at 8:01–06, ECF No. 49-2; Complaint at 3–7, ECF No. 2. No other jurisdiction has a significant relationship to the dispute.

CostPerform other than to assert that his methods are unique and that he can demonstrate their uniqueness at trial.[3]  Nevertheless, the D.C. Circuit has made clear that self-serving testimony can create genuine issues of material fact, even when the testimony suggests that corroborating evidence is readily available.  *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016).  The problem Jenkins faces is not the uniqueness of his methods but the mechanism by which they are protected.  This issue turns on the meaning of the "Proprietary Information" Clause in the Subcontractor Agreement.

Courts in the District of Columbia adhere "to an objective law of contracts," and they "will give effect to the clear terms of an agreement [regardless] of the intent of the parties at the time they entered into the contract."  *Apprio, Inc. v. Zaccari*, 18-cv-2180-JDB, 2021 WL 2209404, at *8 (D.D.C. June 1, 2021) (quoting *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C. 2009)) (internal quotation marks omitted) (alteration in original).  "In construing a contract, the court must determine what a reasonable person in the position of the parties would have thought the disputed language meant," and when "the language in question is unambiguous, its interpretation is a question of law for the court."  *Id.* (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008)).  A court will deem a contract provision ambiguous as a matter of law only when it is "reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings."  *Potomac Elec. Power Co. v. Mirant Corp.*, 251 F. Supp. 2d 144, 148–49 (D.D.C. 2003) (citing *Holland v. Hannan*, 456 A.2d 807, 814 (D.C. 1983)).

---

[3] *See, e.g.*, Jenkins' First Declaration ¶ 7, ECF No. 52-1 ("I created specific—and unique—processes, procedures, and methodologies by which an agency could integrate certain data from its budget, cost and performance functions and then introduce them at the right time during a program's budget lifecycle."); Jenkins' Second Declaration ¶ 7, ECF No. 62-1 ("I will illustrate in detail how MHG duplicated my work but forgot to remove certain details, which are unique to my work product, e.g., provided under the DHS subcontract task order.").

Under the Proprietary Information Clause, any deliverables containing work product developed by Jenkins during the term set for the completion of the task orders constituted a "'work for hire' for the sole benefit of copyright ownership belonging exclusively to MHG." Subcontractor Agreement, Complaint at 15–16, ECF No. 2.  Jenkins, however, "own[s] and maintain[s] all intellectual property rights to any and all pre-existing" works.  *Id.*  To the extent any deliverable "contain[ed] any pre-existing proprietary materials," Jenkins "granted to MHG" a "license . . . to use, modify, and reproduce for use with a [d]eliverable only."  *Id.*

Jenkins contends that he held exclusive rights under the Agreement to the use of his BCPi and TBMx methods, and that to the extent these materials were at all intertwined with the deliverables for DHS or HHS, MHG held a license to them for use within these deliverables alone. The Court agrees that if indeed BCPi and TBMx are pre-existing proprietary materials under the contract, and MHG used these materials for something other than the deliverables associated with the task orders, then MHG violated an obligation defined by the contract.  But this raises a question of interpretation as to what "proprietary materials" means under the contract.

Jenkins does not contend that any legal mechanism, beyond the contract itself, grants him intellectual property rights to BCPi and TBMx.  Rather, he freely admits that he has no ownership interest in the platform on which these methods run, that this software can be freely used by any licensed end user, and that he has no ability to restrict anyone (other than MHG) from using this software in the way he uses it.  The question, then, is whether the Proprietary Information Clause merely recognizes any preexisting intellectual property rights Jenkins may have possessed at the time of contracting (such as trade secret, patent, or copyright) or, instead, grants Jenkins exclusive contract rights vis-à-vis MHG to the use of any materials he produced before entering the Agreement.

In many cases, work-for-hire agreements define terms like "proprietary materials" and "intellectual property rights." *See, e.g.*, *Apprio, Inc.*, 2021 WL 2209404, at *2 (evaluating a contract where "proprietary rights" was defined as "all trade secret, patent, copyright, mask work and other intellectual property rights throughout the world"). But here, the contract provides no definition. As such, the Court will look to dictionary definitions to help discern what a reasonable person in the parties' positions would understand the contract to mean.

Merriam-Webster gives the following relevant definitions for "proprietary": (1) "of, relating to, or characteristic of an owner or title holder"; and (2) "used, made, or marketed by one having the exclusive legal right." *Proprietary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/proprietary [https://perma.cc/78A3-5XQQ]. And Black's Law Dictionary defines "proprietary" as: (1) "[o]f, relating to, or involving a proprietor"; (2) "[o]f, relating to, or holding as property"; and (3) "sold under a tradename." *Proprietary*, BLACK'S LAW DICTIONARY (12th ed. 2024). It further defines "proprietary interest" as "the interest held by a property owner together with all appurtenant rights." *Proprietary Interest*, BLACK'S LAW DICTIONARY (12th ed. 2024).

These definitions evidence some flexibility in meaning. If by "proprietary," the contract refers to that which Jenkins has legal title to, or enforceable and exclusive legal rights in, then the contract did not create any new intellectual property rights—it instead clarified that Jenkins did not transfer to MHG any preexisting intellectual property rights he may have already had. And since Jenkins does not purport to have any protected legal interest in BCPi or TBMx beyond whatever contract rights the Agreement may have given rise to, his claim fails under this interpretation of the Proprietary Information Clause. On the other hand, "proprietary" could conceivably mean "owner" in a more colloquial sense—for example, a person might assert that

they are the owner of a recipe even if a list of ingredients and directions is not copyrightable or otherwise protectable. *See, e.g.*, 17 U.S.C. § 102(b) (copyright does not extend to a "procedure, process, . . . [or] method of operation . . . regardless of the form in which it is described, explained, illustrated, or embodied"). But of course, one could still privately contract to have exclusive rights, in relation to the other party to the agreement, to use and share the recipe.

Closer inspection of the Proprietary Information Clause suggests that the contract adopts the former, rather than the latter, understanding of "proprietary." The Clause states that Jenkins "own[s] and maintain[s] all intellectual property rights" that pre-exist the contract. This is not rights-creating language but instead sounds more like the recognition of existing rights. Additionally, when specifying the ownership status of the materials Jenkins developed during the term of the contract, the Clause states that Jenkins assigned "all rights . . . whether copyrightable or the subject of any other intellectual property rights or industrial property rights . . . such as, but without limitation, all rights in new and useful inventions, all patent rights, and all trade secret and trade dress rights." This suggests that when the Clause references "intellectual property rights," it means those established by operation of independent intellectual property regimes—like copyright, patent, or trade secret—and not by the contract itself. Since Jenkins has not argued that any such regime creates a protectable interest in BCPi or TBMx, these methods are not pre-existing proprietary materials under the contract. The Court will therefore grant summary judgment on the breach-of-contract claim.

## B. Unjust Enrichment Claim

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).

Unjust enrichment is a legal fiction intended "to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (quoting *4934, Inc. v. D.C. Dep't of Emp. Servs.*, 605 A.2d 50, 55 (D.C. 1992)). "Unjust enrichment will not lie when 'the parties have a contract governing an aspect of [their] relation,' because 'a court will not displace the terms of that contract and impose some other duties not chosen by the parties.'" *Id.* at 46 (quoting *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996)) (alteration in original); Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.").

The theory behind Jenkins' breach-of-contract claim is that MHG promised, under the Subcontractor Agreement, not to use Jenkins pre-existing materials outside the context of the deliverables—even if those materials are not protected via some other mechanism like copyright or patent. As discussed above, the Court agrees that the Subcontractor Agreement squarely governs the issues of whether and how MHG may use Jenkins' materials. This would then seem to be exactly the type of case where a valid contract precludes the existence of an implied contract.

But in any event, even assuming Jenkins could pursue overlapping breach-of-contract and unjust-enrichment claims, the Court would not find these circumstances unjust because Jenkins has not raised a genuine issue of material fact regarding whether MHG was on notice as to the content of his BCPi and TBMx methods in comparison to Jenkins' work for hire. Irrespective of whether this fact has any bearing on Jenkins' contract claim, it is fatal to proving unjust enrichment. If Jenkins made no effort to distinguish the work he developed during the term of the

Agreement from his pre-existing materials, then the Court is inclined to conclude that MHG did not unjustly retain any benefit.

To begin, Jenkins initially testified that he did not disclose in writing his BCPi and TBMx methods to MHG. Specifically, when asked at his deposition whether he made any "efforts to specifically identify [his] proprietary information in writing to MHG," Jenkins responded: "I didn't put it in writing." Jenkins Depo. at 53:17-54:03, ECF No. 52-2. But after MHG pointed out this fact in its motion for summary judgment, Jenkins submitted a declaration directly contradicting his original testimony. In this declaration, Jenkins stated that he provided "a written description of [his] IP" to MHG, along with "approximately one-half gigabyte of digital information representing [his] IP." Jenkins' Second Declaration ¶¶ 15–16, ECF No. 52-1. Jenkins made no attempt to reconcile these statements with his prior testimony.

As the Supreme Court has held, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). The Court will therefore disregard Jenkins unexplained change in position.

It is true that, in his deposition, Jenkins did testify that he expressed a concern at the time of contracting about his desire to avoid assigning his intellectual property to MHG, which led to negotiations regarding the content of the Proprietary Information Clause. Jenkins Depo. at 52:05-55:18, ECF No. 52-2. But despite repeated invitations to do so, Jenkins did not represent at his deposition that he ever disclosed his BCPi or TBMx methods to MHG and instead expressly stated that he did not put anything in writing. Jenkins has therefore provided no basis for how MHG

12

would have known to distinguish between Jenkins' work for hire and his pre-existing methods. The Court will accordingly grant summary judgment on the unjust-enrichment claim.

## IV.    CONCLUSION

For the reasons given above, MHG's motion for summary judgment will be **GRANTED**. A separate order will issue.

Date: 11-13-25

Royce C. Lamberth
United States District Judge

13