**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DUANE JENKINS,

*Plaintiff,*

v.

MASON HARRIMAN GROUP, INC,

*Defendants.*

**Case No. 1:23-CV-629-RCL**

# MEMORANDUM OPINION

Defendant Mason Harriman Group ("MHG") prevailed on its Motion for Summary Judgment in this case in November 2025. ECF No. 69. MHG now moves for an award of attorneys' fees pursuant to Federal Rule 56(h) and costs pursuant to Federal Rule 54(d)(1). Def.'s Mot., ECF No. 73. Plaintiff Duane Jenkins opposes. Pl.'s Opp., ECF No. 76. For the reasons stated herein, MHG's motion will be granted.

## I. BACKGROUND

The Court set out the details of this dispute in its previous Memorandum Opinion granting MHG's Motion for Summary Judgment. *See Jenkins v. Mason Harriman Group, Inc.*, No. 23-cv-629, 2025 WL 3171003, at *1 (D.D.C. Nov. 13, 2025). The Court assumes basic familiarity with those facts and recounts only those necessary to resolve the present motion.

In 2021, MHG hired Jenkins as an independent contractor, entering an agreement that specified the services that Jenkins would provide. *Id.* The agreement provided that MHG would have copyright ownership of any of the work that Jenkins produced during the contract term. *Id.* But Jenkins would retain intellectual property rights to pre-existing works. *Id.*

Jenkins claimed that he had previously developed a "cost-management method" called "Budget, Cost, Performance Integration" (BCPi) and a "derivative method called 'Technology Business Management extended.' (TBMx)" *Id.* at *2. Jenkins said that he had developed those methods with a company called "CostPerform," though the company's former president denied involvement. *Id.*

Jenkins sued MHG in 2023 after discovering that MHG planned to use his BCPi method without his approval, alleging breach of contract and unjust enrichment. *Id.* at *2–*3. After an arduous discovery process, the Court granted MHG's Motion for Summary Judgment. *Id.* at *2, *6.

Considering the breach of contract claim, the Court concluded that Jenkins's agreement with MHG merely preserved pre-existing rights, and Jenkins had not argued that he had a protectable interest in BCPi or TBMx. *Id.* at *5.

Turning to the unjust enrichment claim, the Court determined that Jenkins had not "raised a genuine issue of material fact regarding whether MHG was on notice of the content of his BCPi and TBMx methods . . . ." *Id.* at *6. The Court relied upon Jenkins's statements at deposition that he had not identified his proprietary information to MHG in writing and had submitted a declaration that contradicted his original testimony on the matter. *Id.* Notably, Jenkins did not reconcile those statements. *Id.*

Now MHG has moved for attorneys' fees and costs under Federal Rule of Civil Procedure 56(h), alleging that Jenkins submitted his declaration in bad faith. Def.'s Mot. at 2. The motion has been fully briefed and is ripe for the Court's review. *See id.*; Pl.'s Opp., ECF No. 76; Def.'s. Reply, ECF No. 77.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(h) empowers the Court, "[i]f satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay," to "order the submitting party to pay the other party reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h); *see also Murray v. Shulkin*, 273 F. Supp. 3d 87, 93 n.3 (D.D.C. 2017).

When evaluating bad faith, the Court considers whether "declarations 'directly contradicted previous sworn testimony' or were submitted "for the sole purpose of delaying the beginning of the trial." *Mack v. Aspen of D.C., Inc.*, No. 15-1973, 2018 WL 564558, at *7 n.10 (D.D.C. Jan. 24, 2018) (quoting 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2742 (4th ed. 2021)).

"[A]s a practical matter, a court has wide discretion in deciding what constitutes 'bad faith' or whether the introduction of affidavits was 'solely for the purpose of delay [.]'" *Cobell v. Norton*, 214 F.R.D. 13, 20 (D.D.C. 2003) (Lamberth, J.) (internal quotation marks omitted) (quoting 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2742 (3d ed. 1998).

## III. ANALYSIS

### A. Bad Faith

MHG bases its allegations of bad faith on the contradiction between Jenkins's deposition testimony and subsequent declaration, *see* Def.'s Mot. at 13, and allegedly false statements in the declaration regarding Jenkins's relationship with Lim Vermeer, the president of CostPerform, *see id.* at 14. The Court addresses each claim in turn.

1. Contradiction With Deposition Testimony

When being deposed, Jenkins testified that he "didn't put [an identification of his proprietary information] in writing." Jenkins Depo. at 53:20-54:10, ECF No. 52-2. But he stated in his subsequent declaration that he "provided Mr. Washington a written description of [his] IP." Jenkins' Decl. ¶¶ 15-16, ECF No. 52-1.

This Court has previously determined that contradiction can provide evidence of bad faith sufficient to trigger an award of fees and costs under Rule 56(h). *Cobell*, 214 F.R.D. at 21 (collecting cases). But Jenkins argues that his statements were not directly contradictory. Pl.'s Opp. at 13. His brief quotes extensively from his deposition testimony to conclude that although he did not "'identify' the intellectual property *per se* by separate written notice[,]" "he did 'describe' it when turning it over to MHG's counsel . . . ." *Id.* at 14.

But that distinction does not resolve the contradiction, which relates to written identification of allegedly proprietary information. *See* Jenkins Depo. at 53:20-54:10.; Jenkins' Decl. ¶¶ 15-16. And Jenkins slightly misrepresents the testimony in his brief. Jenkins claims that his statements were not contradictory because he was "recollecting . . . albeit in a disrupted fashion, that he had provided his intellectual property to MHG as a means of identifying and ensuring it could satisfy the DHS needs." Pl.'s Opp. at 13. That is not quite right. In the cited deposition testimony, Jenkins states: "I probably showed them before I signed," and "I'm just saying that I could have showed them, before I signed the thing . . . ." *Id.* at 12–13.

The authority that Jenkins cites is therefore inapposite. In *Turner v. Baylor Richardson Medical Center*, the Fifth Circuit declined to award fees and costs under Rule 56(h) because the inconsistency between deposition testimony and a declaration was "between general statements in

the declaration and the descriptions of [] specific[s]" in the deposition. 476 F. 3d 337, 349 (5th Cir. 2007); *see also* Pl.'s Opp. at 11. But the contradictions here are not between general statements and specifics. Jenkins's declaration represented that he had provided notice in writing to MHG. Jenkins' Decl. ¶¶ 15-16. Jenkins's deposition both denied that he had provided written notice, *see* Jenkins Depo. at 53:20-54:10, and was even equivocal about having provided notice at all, *see id.* at 51:15–58:6.

Accordingly, the Court concludes that Jenkins submitted his declaration in bad faith. *See Cobell*, 214 F.R.D. at 21.

2. False Statements

MHG also points to allegedly false statements in the Jenkins Declaration as indicating bad faith. Defs.' Mot. at 14. Specifically, MHG argues that Jenkins made a number of false statements regarding Lim Vermeer and about MHG's response to Jenkins's demand letter. The Court addresses each in turn.

i. Vermeer

MHG alleges that Jenkins made five false statements about Lim Vermeer. Def.'s Mot. at 14. Mr. Vermeer submitted his own declaration in response to the Jenkins Declaration in which he refuted those statements. Vermeer Decl., ECF No. 58-2. Specifically, Vermeer disputed that

1. Mr. Vermeer recognized that "Mr. Jenkins developed BCPI (and its derivative TBMx) as his unique solutions in conducting cost-budget and management analysis for government agencies," *id.* ¶ 5,
2. Jenkins had created unique procedures by which an agency" could integrate certain data from its budget, cost and performance functions," *id.* ¶ 7,

3. Mr. Vermeer spoke to Jenkins about "developing a software framework that could implement [his] agency-facing solutions," *id.* ¶ 8,
4. CostPerform's software development team jointly designed and built BCPi with Jenkins, *id.* ¶ 9,
5. Jenkins's intellectual property had only been disclosed to Mr. Vermeer and MHG, *id.* ¶10.

Mr. Vermeer declared that he had raised the falsity of these issues when Jenkins approached him to provide a declaration, *id.* ¶ 11, and he later requested that Jenkins withdraw the Jenkins Declaration, *id.* ¶ 12. Therefore, MHG argues, Jenkins was aware of the falsity of the statements when he submitted the declaration to the Court. Def.'s Opp. at 15.

In response, Jenkins goes after each allegedly false statement.[1] Notably, however, Jenkins does not respond to point 4. *See* Pl.'s Opp. at 15–16. Jenkins relies heavily upon authority standing for the proposition that credibility is a question reserved for a trier of fact, meaning that Mr. Vermeer's disagreement with Jenkins's statements does not mean that the statements were false. *See id.* at 16.

But that misses the point. Jenkins approached Mr. Vermeer to submit a declaration,[2] Vermeer Decl. ¶ 11, and, when Mr. Vermeer refused to make the statements Jenkins requested, *id.*, Jenkins simply made them in his own declaration, *see, e.g.,* Jenkins Decl. ¶¶ 9–10. Jenkins

[1] The arguments are not particularly persuasive. In response to point 1, for example, Jenkins argues that Mr. Vermeer's "rejoinder" of "I have not said this" is "curious" because the "Declaration attributed no spoken statement to Mr. Vermeer." Pl.'s Opp. at 15. That is a pretty odd response. The Vermeer Declaration states "I have not said or recognized this." Vermeer Decl. ¶ 5. That is a direct response to Jenkins's statement that "Mr. Lim Vermeer, former President of CostPerform, has *recognized* that Mr. Jenkins developed BCPI . . . ." ECF No. 52 at 5 (emphasis added). In any event, Jenkins semantic argument is not responsive.

[2] Jenkins does not dispute this point.

therefore attributed to Mr. Vermeer statements and opinions that he knew that Mr. Vermeer disputed without so much as mentioning or reconciling the points of dispute. Accordingly, the Court concludes that Jenkins submitted these statements in bad faith. *Cobell*, 214 F.R.D. at 21.

ii. MHG Response

Finally, MHG argues that Jenkins's statement that he received "[n]o substantive response" when he contacted MHG regarding his alleged intellectual property was false. Jenkins Decl. ¶ 20. MHG points out that its counsel did, in fact, reply. ECF No. 58-3.

Jenkins tries to skirt this issue, claiming that it "is plainly a collateral issue of no weight." Pl.'s Opp. at 16. He claims that the response was not "substantive" because the letter simply "denied using Mr. Jenkins' Works and did not shed any light on MHG's contracting with the SBA . . . ." *Id.* That may be. But the Jenkins Declaration states that his counsel "had contacted MHG and inquired whether they intended to use 'BCPi'to obtain the SBA work." Jenkins Decl. ¶ 20. Counsel responded: "[I]t is our understanding that MHG has not been provided with any proprietary material by Mr. Jenkins . . . ." ECF No. 58-3 at 2.

The Court sees no reason why a complete denial of MHG's possession of Jenkins's alleged intellectual property is not "substantive." Jenkins's argument that the response shed no light on the matter is quite odd. If MHG's assertion was that no use of Jenkins's alleged intellectual property existed, there would be nothing upon which to shed light. Accordingly, the Court concludes that this statement too evinces bad faith on Jenkins's part.

Considering these circumstances as a whole, the Court finds that the Jenkins Declaration was submitted in bad faith and that a fee award is justified. MHG's motion will therefore be granted.

**B. Fee Award**

Having determined that the Jenkins Declaration was submitted in bad faith, the Court may award "reasonable expenses, including attorney's fees" that MHG incurred in responding to the Jenkins Declaration. Fed. R. Civ. P. 56(h).

Jenkins argues that MHG has provided no evidence that MHG incurred extra work as a result of the Jenkins Declaration. Pl.'s Opp. at 18. But MHG has produced an account of the hours that their attorneys expended in preparing their reply to Jenkins's opposition to their motion for summary judgment. ECF No. 73-1. Jenkins does not contest MHG's method of calculating fees: multiplying the hours expended by "a reasonably hourly rate." Def.'s Mot. at 18 (quoting *Ternes v. C.R. Home Improvement*, No. 24-1277, 2025 WL 2494697, at *2 (D.D.C. Aug. 29, 2025)).

MHG seeks a fee award of $40,109.50. *Id.* That amount reflects time spent "analyzing, investigating, and responding to the false and contradictory statements in the Jenkins declaration." *Id.* But the timesheet that MHG provided seems to account for the whole amount of time drafting their reply brief. *See* ECF No.73-1 at 13. Even had Jenkins not submitted the declaration at issue, MHG would presumably have submitted a reply brief. And the reply brief that they submitted was not solely dedicated to the Jenkins Declaration. *See* ECF No. 58.

A reasonable fee award in this case should reflect the difference between the time spent on the reply brief had the Jenkins Declaration not been submitted and the time ultimately expended. The Court determines that a reasonable estimation of that difference is the amount of the reply brief dedicated to discussing the Jenkins Declaration. Seven of the fourteen pages of the Reply brief are dedicated to responding to the Jenkins Declaration. *See* ECF No. 58. Accordingly, Jenkins will be ordered to pay $20,054.75 in attorneys' fees.

### C. Costs

Finally, MHG seeks costs pursuant to Federal Rule 54(d)(1). "[T]he decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. General Revenue Corp.*, 568 U.S. 371, 377 (2013). Still, "Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs." *Id.*

MHG claims that it has incurred $3,836.10 in costs. Def.'s Mot. at 20. "[A] court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Borum v. Brentwood Village*, LLC, No. 16-1723, 2020 WL 5291982, at *12 (D.D.C. Sept. 4, 2020) (internal quotation marks omitted) (quoting *Baez v. U.S. Dep't of Just.*, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc)). "Consequently, 'federal courts have placed on the unsuccessful parties some burden of showing circumstances sufficient to overcome the presumption favoring the prevailing party.'" *Id.* (quoting *Baez*, 684 F.2d at 1004).

Jenkins argues that the Court should not exercise its discretion to award costs because of "the obstructionist conduct of the Defendant and its vindictive over-reaching in post-trial motions . . . ." Pl.'s Opp. at 10. He further points out that the Court awarded expenses that Jenkins incurred in moving to compel the Vagias deposition, ECF No. 59, a transcript for which MHG now wishes to be compensated, *see* ECF 73-2 at 18. It would be illogical, Jenkins argues, to compensate MHG for that cost. Pl.'s Opp. at 9.

But that argument does not really hold water. Jenkins got the deposition he wanted and was awarded expenses for having to litigate the motion to compel. *See* ECF No. 59. But that does not mean that MHG cannot now be compensated for the cost of the deposition transcript itself now that they have substantially prevailed.

The Court recognizes that it has had to compel discovery from MHG in this case, but "trial judges have rarely denied costs to a prevailing party whose conduct has not been vexatious when the losing party has been capable of paying such costs." *Baez*, 684 F.2d at 1004. Jenkins has pointed to no authority demonstrating that losing a motion to compel suggests vexatious conduct. And the Court awarded Jenkins expenses for litigating each of those motions already. *See* ECF Nos. 36, 59.

Accordingly, the Court will award MHG its costs of $3,836.10.

**D. Fees on Fees**

Finally, MHG seeks attorneys' fees for time spent litigating its Motion for Attorneys' Fees. *See* ECF No. 78. Jenkins has not filed any opposition.

"Hours reasonably devoted to a request for fees are compensable." *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (internal quotation marks omitted) (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985)). Still, "[c]ourts . . . 'have an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys.'" *Id.* (quoting *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008)).

MHG requests $54,017. ECF No. 78 at 2. "Following the methodology employed by many of its colleagues in this district, the Court will reduce the amount of fees on fees proportionally to the percentage of fees actually awarded." *Colorado Wild Public Lands v. U.S. Forest Serv.*, No. 21-cv-2802, 2025 WL 2406340, at *7 (D.D.C. Mar. 21, 2025). MHG's award would accordingly be reduced to $27,008.5.

Still, that amount is greater than the cost that MHG actually incurred in responding to the Jenkins Declaration and would therefore constitute a windfall. *See Urban Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 327 (D.D.C. 2020) (finding that a fees-on-fees award representing 30% of claimed litigation costs was a windfall in FOIA litigation). Accordingly, the Court will, as an exercise of discretion, reduce the fees-on-fees award to $2,700.85.

## IV. CONCLUSION

For the reasons stated herein, MHG's Motion for Attorneys' Fees will be granted. Jenkins will be ordered to pay $20,054.75 in attorney's fees, $3,836.10 in costs, and $2,700.85 in fees-on-fees.

An order accompanying this Memorandum Opinion shall issue.

Date: 5 October, 2026

Hon. Royce C. Lamberth
United States District Judge